UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
JENNA CRENSHAW, ANDREW BRICKLEY,            )
CRISTIANO DUTRA, SHAUNTAY KING,             )
KRYSTLE STRANGIS, KRISTIN MORENCY,          )
and all others similarly situated,          )
                                            )
                       Plaintiffs,          )
                                            )
           v.                               )     Civil Action No.
                                            )     11-10549-JLT
TEXAS ROADHOUSE, INC., TEXAS ROADHOUSE      )
MANAGEMENT CORP., TEXAS ROADHOUSE           )
HOLDINGS, LLC, TEXAS ROADHOUSE OF           )
EVERETT, LLC, d/b/a Texas Roadhouse,        )
                                            )
                       Defendants.          )
_____ )

### PLAINTIFFS' ASSENTED-TO MOTION FOR
### FINAL APPROVAL OF CLASS ACTION SETTLEMENT

This motion is being submitted in anticipation of the final settlement approval hearing scheduled for Wednesday, September 5, 2012.[1] This action was brought on behalf of individuals who have worked as servers at Texas Roadhouse restaurants in Massachusetts. The named plaintiffs alleged that the tip distribution practices at these restaurants have violated the Massachusetts Tips Law, Mass. Gen. L. c. 149 § 152A, and the Massachusetts Minimum Wage Law, Mass. Gen. L. c. 151 § 1 and 7, as well as the common law. Although Texas Roadhouse disputes the allegations in the complaint,

---

[1] The final settlement approval hearing was initially scheduled for August 28, 2012, and the notice sent to class members informed them that the final settlement approval hearing would take place on August 28, 2012. However, defense counsel had a conflict and requested that the date be rescheduled. Accordingly, the Court set the final approval hearing for Wednesday, September 5, 2012, and set August 28, 2012, as an interim approval date, so that the parties and the Court could determine whether any class members appeared on that date and requested to be heard. The interim approval hearing did take place on August 28, 2012, and no class member appeared on that date.

Plaintiffs and Defendants have reached an agreement to settle this action on a classwide basis for a total of $5,000,000.

For purposes of this proposed settlement, Plaintiffs propose that the settlement class be defined as: all individuals who have worked in the position of SERVER at any of Defendants' restaurants in Massachusetts at any time from January 18, 2005, up to the date of final Court approval of the settlement. During the relevant time period, Texas Roadhouse has operated restaurants in nine locations in Massachusetts, and the proposed settlement includes all nine locations. The nine locations are: Brockton, Danvers, Everett, Leominster, Methuen, North Dartmouth, Springfield, Walpole, Worcester.

On May 4, 2012, this Court preliminarily approved this class action settlement and authorized that notice be sent to class members. Subsequently, Plaintiffs' counsel sent notice to all member of the class, a total of 1,744 individuals. A copy of the notice and claim form that were sent to class members is attached as Exhibit 1. As of August 20, 2012, the deadline for class members to submit claim forms, object to the settlement, or opt out of the case, no class members had submitted objections to the settlement or opted out, and a total of 566 individuals have submitted claim forms thusfar.

As set forth in more detail below, this settlement is fair, reasonable, and adequate, and Plaintiffs request that this Court approve the settlement pursuant to Federal Rule of Civil Procedure 23(e).

I. **THE PROPOSED PLAN FOR NOTICE TO CLASS MEMBERS AND DISTRIBUTION OF SETTLEMENT FUNDS.**

A.     **Dissemination of Class Notice**

On approximately May 21, 2012, Plaintiffs' counsel sent notice of the class settlement by first-class mail to the last known addresses of all individuals who have worked as servers at any Texas Roadhouse restaurant in Massachusetts since January 18, 2005.  Texas Roadhouse provided these addresses to Plaintiffs' counsel, based on its personnel records.  When addresses have come back as undeliverable, Plaintiffs' counsel has performed searches to obtain updated addresses using the Westlaw People Finder database and has promptly resent the notices and claim forms to these updated addresses.  Additionally, Plaintiffs' counsel has engaged in further investigation on the Internet to find the addresses of individuals for whom the Westlaw People Finder database did not provide updated addresses.  Moreover, Plaintiffs' counsel also sent another round of notices to class members in early August 2012, to give class members another opportunity to submit claim forms.

Notice was originally mailed to 1,744 individuals.  Initially, 343 of the mailings were returned as undeliverable.  After the searches described above, notice was resent to updated addresses for 247 of the 343 individuals for whom the notice was originally undeliverable (leaving a total of 96 undeliverable notices).  As of August 29, 2012, 566 individuals had submitted claim forms, representing 45% of the total settlement funds.

Moreover, per the parties' agreement, class members will be given another opportunity to submit claim forms as well.  Specifically, the parties' settlement agreement, attached as Exhibit 2, provides that a second notice will be sent to class members approximately three months after the initial distribution of settlement funds.

3

The method of notice in this case (which was preliminarily approved by this Court) satisfies the standard established by the United States Supreme Court for disseminating notice to class members, namely it is "the best notice that is practicable under the circumstances." Brown v. Colegio de Abogados de Puerto Rico, 2011 WL 721910, at *1 (D.P.R. Feb. 28, 2011) (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 317-18 (1950)).  As one court has noted, "'[n]otice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members.'" Serio v. Wachovia Securities, LLC, 2009 WL 900167, at *8 (D.N.J. Mar. 31, 2009) (quoting In re Merrill Lynch TYCO Research Sec. Litig., 249 F.R.D. 124, 133 (S.D.N.Y. 2008)); see also In re Integra Realty Resources, Inc., 354 F.3d 1246, 1261 (10th Cir. 2004) ("imposing a requirement of actual notice to every class member would place an impossible constraint on . . . class action litigation").

Courts routinely recognize that notice by mail satisfies the requirements of Rule 23 regarding notice.  See, e.g., In re Compact Disc Minimum Advertised Price Antitrust Litig., 216 F.R.D. 197, 218 (D. Me. 2003) ("[I]ndividualized notice by first-class mail ordinarily satisfies the requirement that class members receive the best notice practicable under the circumstances"); Parks v. Portnoff Law Assocs., 243 F. Supp. 2d 244, 249 (E.D. Pa. 2003) (notices mailed to class members' last known addresses held reasonable and adequate). Moreover, the low undeliverable rate here—approximately 5% of the class—is well within the range that courts have found to be acceptable.  See, e.g., In re Integra Realty Resources, Inc., 354 F.3d 1246, 1261 (10th Cir. 2004) (notice held reasonable and

adequate even though 1,455 out of 6,423 claim forms were "not actually received"); Grunin v. International House of Pancakes, 513 F.2d 114, 121-22 (8th Cir. 1975) (approving notice where 33% of class members not reached by mailing).

Given Plaintiffs' counsel's substantial and continuing efforts to ensure that notice of the class action settlement is actually received by as many class members as possible, the dissemination of the notice here unquestionably satisfies Rule 23.

### B.   Distribution of Settlement Funds

Plaintiffs propose that the settlement funds be divided up as follows: $3,213,334 to be distributed to the class (less limited third-party class administration costs, estimated to be approximately $15,000), $1,666,666 as the standard 1/3 attorneys' fees (and costs), and incentive payment of $25,000 each for three of the lead plaintiffs and $15,000 each for three of the lead plaintiffs. Plaintiffs propose that settlement funds will be distributed among class members as follows. First, for all restaurants other than the North Dartmouth location, each class member shall receive a settlement share proportional to hours worked as a server during the applicable time period, but hours worked during the period before January 18, 2008, will be weighted at 1/6 as compared with hours worked after January 18, 2008.² This weighting reflects the relative strength of the statutory claims as compared with the common law claims, as well as the availability of treble damages for the statutory claims. Second, in recognition of the factual differences as to the North Dartmouth location (specifically, discovery and investigation revealed that the challenged practices did not systematically take place at that location), class members from the North Dartmouth restaurant will be entitled to a

---

²     The statute of limitations for the Tips Law claim is three years and for the tip credit minimum wage claim is two years, while the earlier period covers only contract-based common law claims (for which the statute of limitations is six years).

payment ranging from a minimum of $75 to a maximum of $500, depending on length of service.  Finally, all class members shall receive a minimum payment of no less than $75.

The first distribution of class settlement shares (and also including lead plaintiffs' incentive payments and attorneys' fees) would take place within sixty days of final Court approval of the settlement.  In the final distribution of settlement funds (which would occur forty-five days after the mailing of the second notice), unclaimed funds will be redistributed to class members in proportion to their initial shares from the settlement (but class members whose second shares would be less than $50 would not receive a second share).

Checks to class members will be paid out 1/3 as W2 wages and 2/3 as penalties to be reported as 1099 other income.

After the distribution of all settlement funds, any remaining funds (e.g., from uncashed checks) would be held for an additional ninety days and may be used to resolve any disputes which may arise.  After the ninety days have elapsed, all remaining unclaimed funds will be distributed on a *cy pres* basis to the charity of Texas Roadhouse's choosing, Andy's Outreach, a 501(c)(3) charitable organization.

Under the formula proposed by Plaintiffs, settlement shares for class members would range from $75 minimum to as much as $16,000, with the average class member receiving slightly less than $2,000.  The chart attached as Exhibit 3 shows the amounts to be distributed to class members under this formula.  These numbers will likely increase, moreover, because the unclaimed funds are being redistributed to those class members who have submitted claim forms.

The proposed distribution also allocates 1/3 for attorneys' fees and costs, as well as a total of $120,000 as incentive payments for the six lead plaintiffs who brought this case forward and assisted counsel with pursuing it on behalf of a class ($25,000 each for Jenna Crenshaw, Andrew Brickley, and Cristiano Dutra; and $15,000 each for Shauntay King, Krystle Strangis, and Kristin Morency).

## II.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

It is well-established that courts favor settlements of lawsuits over continued litigation. See, e.g., Williams v. First Nat'l Bank, 216 U.S. 582, 595 (1910); Durett v. Housing Auth. of Providence, 896 F.2d 600, 604 (1st Cir. 1990); In re Viatron Computer Sys. Corp., 614 F.2d 11, 15 (1st Cir. 1980). Indeed, "'[a]ll settlements spare the judicial system and the litigants the expense and time associated with the full panoply of pretrial, trial and posttrial proceedings.'" Vermont Pure Holdings, Ltd. v. Berry, 23 Mass. L. Rptr. 33, 2010 WL 1665258, *11 (Mass. Super. 2010) (quoting 2 McLaughlin on Class Actions § 6:3). Moreover, "'[c]ourts have consistently noted that the public interest favoring the settlement of litigation is even stronger in the context of class action litigation, where one proceeding can resolve many thousands or even millions of claims that might otherwise threaten to swamp the judiciary.'" Id.

A class action may not be compromised without court approval, and the court must decide whether the settlement is "fair, reasonable, and adequate." see Fed. R. Civ. P. 23(e); see also In re Relafen Antitrust Litig., 360 F. Supp. 2d 166, 195 (D. Mass. 2005). At the preliminary approval stage, the court need not "come to a final conclusion as to whether the proposed settlement is fair, reasonable, and adequate," In re Massachusetts Smokeless Tobacco Litig., 23 Mass. L. Rptr. 719, 2008 WL 1923063, *3

7

(Mass. Super. 2008); the court should grant preliminary approval if the proposed settlement "appears to fall within the range of possible approval." In re Prudential Sec. Litig., 163 F.R.D. 345, 355 (E.D.N.Y. 2006).

"When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement." In re M3 Power Razor System Marketing & Sales Practice Litig., 270 F.R.D. 45, 62-63 (D. Mass. 2010). Specifically, when the following "procedural guidelines have been followed," there is a "presumption that the settlement is within the range of reasonableness": " '(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" Id. (quoting In re Lupron Mktg. and Sales Prac. Litig., 345 F. Supp. 2d 135, 137 (D. Mass. 2004)).

For several reasons, the settlement proposed in this case is reasonable, and preliminary approval is appropriate. The settlement was a result of extensive arms-length negotiations, including a full-day mediation session and extension follow-up sessions with the mediator. In preparation for the mediation, Plaintiffs' counsel reviewed thousands of pages of documents that had been produced in discovery, and the parties had begun depositions when settlement talks got underway. Additionally, counsel for Defendants provided damages documentation to Plaintiffs' counsel, from which Plaintiffs' counsel were able to determine the scope of potential available damages in this case.

### A.    Plaintiffs' counsel are highly experienced in similar litigation.

Notably, Plaintiffs' counsel, Shannon Liss-Riordan, Esq. and Hillary Schwab, Esq. of Lichten & Liss-Riordan, P.C. have extensive experience litigating and settling cases brought under the Massachusetts Tips Law.  Counsel were able to draw on that experience in negotiating the settlement in this case and in conceiving of the plan for notice to be distributed to class members and calculation of class members' settlement shares.  Indeed, Plaintiffs' counsel have represented wait staff in dozens of other class action cases raising claims under the Massachusetts Tips Law which have settled on a classwide basis.[3]  Those settlements contained very similar terms to the proposed

---

[3]    Massachusetts Tips Law cases that have settled on a class-wide basis include:  Butcher et al. v. Oznemoc, Inc., Suffolk Sup. Ct. Civil Action No. 11-00629; Rebello et al. v. Back Bay Restaurant Group, Inc., Suffolk Sup. Ct. Civil Action No. 12-401; Bedoya et al. v. Back Bay Restaurant Group, Inc., Suffolk Sup. Ct. Civil Action No. 11-85; Parker v. The Wayside Inn, Middlesex Sup. Ct. Civil Action No. 10-01534; Parker v. Hudson Golf LLC, Middlesex Sup. Ct. Civil Action No. 10-01533; Myers v. Dean Serpa Co., Inc., Suffolk Sup. Ct. Civil Action No. 11-00710; Abla v. Brinker Restaurant Corp., D. Mass. Civil Action No. 10-10373-JLT; Perry v. Boston Duck Tours, Ltd. P'ship, Suffolk Sup. Ct. Civil Action No. 10-01534; Farrier v. Back Bay Restaurant Group, Inc., Suffolk Sup. Ct. Civil Action No. 09-01741; Ramsay v. McCormick & Schmick Restaurant Corp., Suffolk Sup. Ct. Civil Action No. 09-01846; Malinski v. Starwood Hotels & Resorts Worldwide, Inc. and Pyramid Advisors LLC, D. Mass. Civil Action No. 08-11859-RWZ; Betancur et al. v. Kimpton Hotel & Restaurant Group, LLC, Suffolk Superior Court C.A. No. 08-3088; Danby Rusiecki v. The Smith and Wollensky Restaurant Group, Inc., Suffolk Sup. Ct. Civil Action No. 08-01074; Tucker v. W.P. First Co., Inc., Plymouth Sup. Ct. Civil Action No. 08-00128; DiIorio v. The Ritz-Carlton Hotel Company, LLC and IHMS (Boston) LLC, Suffolk Sup. Ct. Civil Action No. 07-00131; Benoit v. The Federalist, Inc., Suffolk Sup. Ct. Civil Action No. 04-03516; Cobuzzi v. Watch City Brewing Co., Middlesex Sup. Ct. Civil Action No. 2008-02552; Hayes et al. v. Aramark Sports Service LLC, U.S. Dist. Ct. (D. Mass.) C.A. No. 08-10700; Noons et al. v. Flemings/Boston, Limited Partnership, C.A. No. 09-0167 (Suffolk Superior Ct. 2009); Scatto v. Fine Hotels Corp., C.A. No. 07-1823 (Bristol Superior Ct. 2009); Mouiny v. Commonwealth Flats Dev. Corp. d/b/a Seaport Hotel and World Trade Center, C.A. No. 06-1115 (Suffolk Superior Ct. 2009); Shea et al. v. Weston Golf Club, C.A. No. 02-1826 (Middlesex Superior Ct. 2009); Godt et al. v. Anthony's Pier Four, Inc., C.A. No. 07-3919-BLS1 (Suffolk Superior Ct. 2009); Williams et al. v. Hard Rock Café International, Inc., C.A. No. 08-1783 (Suffolk Superior Ct. 2009); Karag et al. v. State Room, Inc., C.A. No. 07-4190-BLS1 (Suffolk Superior Ct. 2009); Rose et al. v. Ruth's Chris Steak House Boston, LLC, C.A. No. 07-5081 (Suffolk Superior Ct. 2008); Verecchia et al. v. DT Management, Inc. d/b/a Hotel @ MIT et al., C.A. No. 08-0127 (Middlesex Superior Ct. 2008); Perry et al. v. Woodman's, Inc., C.A. No. 08-1218 (Essex Superior Ct. 2008); Roth v. Vesper Country Club, C.A. No. 07-1231 (Middlesex Sup. Ct. 2008); Cooney et al. v. Compass Group Foodservice and Northeastern University, C.A. No. 02-3159 (Middlesex Superior Ct. 2008); Paratore et al. v. F-1 Boston Café, LLC, C.A. No. 02-2162 (Norfolk Superior Ct. 2008); Byrne et al. v. Elephant and Castle Group, LLC, C.A. No. 06-4732 (Suffolk Superior Ct. 2008); Tucker et al. v. Halifax Investments, Inc., C.A. No. 07-154 (Plymouth Superior Ct. 2008); Ng et al. v. Jin Restaurant Group LLC, C.A. No. 07-333 (Essex Superior Ct. 2008); Fernandez et al. v. Four Seasons Hotel, C.A. No. 02-4689 (Suffolk Superior Ct. 2008) (banquets) (Muse, J.); Banks et al. v. SBH Corp. (Grill 23), C.A. No. 04-3515 (Suffolk Superior Ct. 2007) (Connolly, J.); Frye

9

settlement in this case, including the same provision for attorneys' fees and the same basic method for notifying class members and distributing the settlement proceeds.

Indeed, the attorneys at Lichten & Liss-Riordan, P.C. are pioneers in the field of misappropriation of workers' tips under Massachusetts law. The law firm of Lichten & Liss-Riordan, P.C. has represented plaintiffs in dozens of cases brought under the Massachusetts Tips Law, Mass. Gen. L. c. 149 § 152A. They have been class counsel in more than thirty Tips Law cases that have settled on behalf of a plaintiff class. See footnote 3, supra. In addition to the many cases that have settled on a class basis, they have also represented plaintiffs in three Tips Law cases that resulted in successful jury verdicts,[4] three that resulted in favorable state appellate court rulings,[5] and numerous

---

et al. v. Columbia Sussex Corp., C.A. No. 06-4622 (Middlesex Superior Ct. 2007) (Billings, J.); Calcagno et al. v. High Country Investor, Inc. (Hilltop), C.A. No. 03-0707 (Essex Superior Ct. 2006) (Murtagh, J.); Ellison, et al. v. NPS, LLC, C.A. No. 05-01105 (Middlesex Sup. Ct. 2006) (Hamlin, J.); Meimaridis, et al. v. Brae Burn Country Club, C.A. No. 04-3769 (Middlesex Superior Ct. 2006) (Fremont-Smith, J.); Hough et al. v. Select Restaurants, Inc. d/b/a Top of the Hub, C.A. No. 05-1258 (Suffolk Sup. Ct. 2006) (Brassard, J.); Bullock et al. v. Ritz-Carlton Hotel Co., C.A. No. 04-04379 (Suffolk Sup. Ct. 2005); Michalak et al. v. Boston Palm Corporation, C.A. No. 03-1334 (Suffolk Sup. Ct. 2004) (White, J.); Williamson et al. v. DT Management Co. d/b/a Boston Harbor Hotel, Inc., C.A. No. 02-01827 (Middlesex Sup. Ct. 2004) (Neel, J.); Fernandez et al. v. Four Seasons Hotel, LTD, C.A. No. 02-4689 (Suffolk Sup. Ct. 2004) (room service) (Walker, J.); Keyo et al. v. Seaport Hotel and World Trade Center Boston, et al., C.A. No. 02-3339 (Suffolk Sup. Ct. 2004) (Murphy, J.); Licari et al. v. Meridien Hotels, Inc., C.A. No. 02-3340 (Suffolk Sup. Ct. 2003) (McEvoy, J.); and Latta et al. v. The Nashawtuc Country Club, Inc., C.A. No. 01-4185 (Middlesex Sup. Ct. 2003) (Giles, J.).

[4]   See Calcagno et al. v. High Country Investor, Inc., d/b/a Hilltop Steak House, C.A. No. 03-0707, Mass. Sup. Ct. (Essex 2006) (banquet coordinators not entitled to share in gratuities); Benoit et al. v. The Federalist, Inc., C.A. No. 04-3516, Mass. Sup. Ct. (Suffolk 2007) (coordinators not entitled to portion of banquet service charges); and DiFiore et al. v. American Airlines, Inc., C.A. No. 07-10070, U.S. Dist. Ct. (D. Mass. 2008) (airline's policy of collecting $2 per bag charge for curbside check-in that was not distributed to skycaps violated Mass. Tips Law and rendered airline liable for tortious interference with advantageous relations).

[5]   See DiFiore v. American Airlines, Inc., 454 Mass. 486 (2009) (Supreme Judicial Court decided on certified question that non-employers are covered by Tips Law, affirming jury verdict for plaintiff skycaps); Bednark v. Catania Hospitality Group, Inc., 78 Mass. App. Ct. 806 (2011) (reversing grant of summary judgment against plaintiff wait staff, holding that Tips Law covers charges labeled "administrative fees" that customers could reasonably believe are gratuities); Cooney v. Compass Group Foodserv., 69 Mass. App. Ct. 632 (2007) (reversing trial court's denial of summary judgment for plaintiff wait staff, holding that Tips Law should be strictly construed against establishment that did not distribute proceeds of charges labeled "service charges" to wait staff employees).

others in which they have obtained summary judgment and/or class certification decisions in their favor.

Plaintiffs' counsel are thus well aware of the law in this area, and their experience has provided the plaintiff class with a high degree of expertise, which clearly contributed to a favorable resolution of this case. Plaintiffs' counsel used the knowledge derived from these other cases in determining what would be a fair settlement for the plaintiffs in this case.

Attorneys Liss-Riordan and Schwab are also experienced in the mechanics of class settlement administration. In the more than 30 other cases they have settled as class actions, there have been thousands of class members overall requiring active engagement in processing claims from these settlements and distributing settlement proceeds. These tasks have required counsel, and their paralegal assistants, to speak with and correspond with numerous class members. Nearly universally, all class members with whom Plaintiffs' counsel have been in contact from all of these cases have been supportive of, and indeed quite excited about, these settlements. For them, these settlements have brought them additional income, which most of them were not expecting.

While class members may have little basis from which to judge independently the fairness of a proposed settlement, Plaintiffs' counsel take very seriously their obligation and duty to these unnamed class members and will agree to a settlement only when they are convinced that it is in the best interest of the class. In this case as well, the named plaintiffs have been committed to obtaining a fair resolution of the case for all of

their fellow class members as well as themselves, and have supported Plaintiffs' Counsel's commitment to negotiating on behalf of the interest of the entire class.

The settlement also proposes incentive payments for the lead plaintiffs as follows: $25,000 each for Jenna Crenshaw, Andrew Brickley, and Cristiano Dutra; and $15,000 each for Shauntay King, Krystle Strangis, and Kristin Morency. These proposed incentive payments are fair and reasonable, given that it was these plaintiffs who initiated the lawsuits on behalf of their co-workers and because it was through their initiative that this recovery was obtained. The named plaintiffs provided invaluable assistance to class counsel, including providing documents, responding to discovery, and contacting class members to gather evidence relating to the case. Additionally, several of the named plaintiffs attended the mediation and assisted Plaintiffs' counsel. One named plaintiff sat for a full-day deposition.

Courts have widely recognized that incentive payments serve an important function in promoting enforcement of state and federal law by private individuals, while encouraging class action settlements. See In re Relafen Antitrust Litig., 231 F.R.D. 52, 82 (D. Mass. 2005) ("Incentive awards are recognized as serving an important function in promoting class action settlements, particularly where as here, the named plaintiffs participated actively in the litigation"), quoting In re Lupron, 228 F.R.D. 75, 98 (D. Mass. 2005); In re Compact Disc Min. Adver. Price Antitrust Litig., 292 F. Supp. 2d 184, 189 (D. Me. 2003) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit"); Savett, et al., "Consumer Class Actions: Class Certification Issues, Including Ethical Considerations and Counsel Fees and Incentive Payments to

12

Named Plaintiffs," 936 PLI / Corp. 321, 340 ("It has become commonplace for the named representatives to request a special payment for having borne the flag and headed a class action. Most courts are receptive to this because they feel that private attorneys general should be encouraged, and such incentives further the goals of federal and state laws"); see also, e.g., Sheppard v. Consol. Edison Co. of New York, Inc., 2002 WL 2003206, at *5-6 (E.D.N.Y. 2002) (collecting cases approving incentive payments).

It is not uncommon for courts to approve incentive payments in the range of those requested in this case, and in even higher amounts. See, e.g., Ingram v. The Coca-Cola Co., 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding $300,000 to each of four representative plaintiffs); In re Dun & Bradstreet Credit Servs. Customer Litig., 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (citing cases in support of incentive payments and awarding payments ranging from $35,000 to $50,000 for named plaintiffs); Yap v. Sumintomo Corp. of Am., 1991 WL 29112, *9 (S.D.N.Y. 1991) (awarding $30,000 additional compensation to representative plaintiffs). Notably, the courts in many of the cases cited at footnote 3, supra, have approved incentive payments to lead plaintiffs in the range requested here. See, e.g., Shea v. Weston Golf Club, Middlesex Civ. A. No. 02-1826 (Mass. Super. 2009) (approving $25,000 incentive payments for lead plaintiffs); Fernandez v. Four Seasons Hotel, Suffolk Civ. A. No. 02-4689 (Mass. Super. 2008) (same); Banks v. SBH Corp. (Grill 23), Suffolk Civ. A. No. 04-3515 (Mass. Super. 2007) (same); Frye v. Columbia Sussex Corp., Middlesex Civ. A. No. 06-4622 (Mass. Super. 2007) (same); Meimaridis v. Brae Burn Country Club, Middlesex Civ. A. No. 04-3769

(Mass. Super. 2006) (same).  As in those cases, the proposed incentive payments are reasonable.

Indeed, incentive payments serve a particularly important role in employment class actions, where the lead plaintiffs are risking their livelihood to bring the case forward on behalf of their fellow co-workers.  Courts have recognized the important role of class actions in the employment context precisely because of this very real element of potential retaliation.  See, e.g., Overka et al. v. American Airlines, Inc., Civil Action No. 08-10686-WGY (D.Mass.) (ECF No. 50, at 22) (in certifying national class of skycaps challenging $2 per bag curbside check-in charges, court noted with approval skycaps' argument that "class adjudication is superior in the employment context because fear of employer retaliation may have a chilling effect on employees bringing claims on an individual basis" and held that class action "is a superior method for adjudication of the controversy").  See also Perez v. Safety-Kleen Systems, Inc., 253 F.R.D. 508, 520 (N.D. Cal. 2008) (concluding class action was superior because, *inter alia*, "some class members may fear reprisal"); Guzman v. VLM, Inc., 2008 WL 597186, at *8 (E.D.N.Y. 2008) (noting "valid concern" that "many employees will be reluctant to participate in the action due to fears of retaliation").  This same consideration makes incentive awards even more crucial in employment class action settlements as well.  As one court has observed:  "[Incentive] awards are particularly appropriate in the employment context.  In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the

14

employer or co-workers." Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005).

In light of the arms'-length hard fought negotiation in this case and Plaintiffs' counsel's prior experience and expertise in this area of law, the Court should find this proposed settlement to be fair, reasonable, and adequate and should issue preliminary approval.

### III. THE REQUESTED ATTORNEYS' FEE IS FAIR AND REASONABLE AND SUPPORTED BY THE APPLICABLE PRECEDENT

The proposed distribution of the settlement proceeds provides for a one-third share for attorneys' fees and expenses ($1,666,666). That amount represents one-third of the total settlement funds, in line with the usual and customary practice of setting contingency fees at one-third of any recovery.[6] The named Plaintiffs support this payment and, indeed, signed retainer agreements providing for a one-third contingency arrangement. At the time these retainers were signed, Plaintiffs' counsel was taking a substantial risk by agreeing to pursue a class action with no assurance that they would recover any fees. In addition, the Notice of Settlement informs class members that one-third of the settlement proceeds would be used to pay for attorneys' fees

The proposed attorneys' fee is the same standard one-third share that has been approved by all the judges who have ruled on the fairness of the other settlements listed above. This Court, as well, should also approve this fee as fair and reasonable.

Courts generally favor an award of fees from a common fund, as called for by the proposed settlement in this case. As the Supreme Court has explained:

---

[6] Contingency fee arrangements typically provide for attorneys' fees equal to one-third of a settlement amount, *plus* reimbursement of any costs, so the maximum award of fees and costs in this case is actually lower than what would result from a typical contingency arrangement.

15

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole. . . . Jurisdiction over the fund involved in the litigation allows a Court to prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980) (citations omitted). See also Blum v. Stenson, 465 U.S 886, 900 n.16 (1984); In re Thirteen Appeals, 56 F.3d 295 (1st Cir. 1995) (awarding attorneys' fees of $68 million out of a $220 million settlement fund).

When awarding fees from a common fund, the "percentage of the fund" method is preferred over the lodestar method. As the First Circuit observed, the percentage method is less burdensome to administer than the lodestar method. In re Thirteen Appeals, 56 F.3d at 307. The court also endorsed the percentage method because it is result-oriented, and therefore promotes a more efficient use of attorney time – a loadstar method may give attorneys an incentive to spend as many hours as possible on the litigation and may discourage early settlements. Id. When using the percentage method, courts routinely approve fee awards that represent one-third of the settlement fund.[7]

---

[7] There are numerous examples of cases in which a one-third fee was approved, including: In re Lithotripsy Antitrust Litigation, No. 98 C 8394, 2000 U.S. Dist. LEXIS 8143 at *6-7 (N.D. Ill. June 12, 2000) (noting that 33.3% of the fund plus expenses is well within the generally accepted range of the attorneys fee awards in class-action lawsuits); In re Medical X-Ray Film Antitrust Litigation, CV-93-5904, 1998 U.S. Dist. LEXIS 14888 at *21 (E.D.N.Y. Aug. 7, 1998) (awarding a fee of $13 million, which represented one-third of the settlement); In re Crazy Eddie Securities Litig., 824 F. Supp. 320, 325-26 (E.D.N.Y. 1993) (awarding 34% of a $42 million fund); City National Bank v. American Com. Financial Corp., 657 F. Supp. 817 (W.D.N.C. 1987); In re Franklin Nat'l Bank, [1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) &97,571 (E.D.N.Y. 1980) (34% of settlement fund); Hwang v. Smith Corona Corp., B.89-450 (D. Conn. Mar. 12, 1992) (awarding one-third of $24 million fund); Chalverus v. Pegasystems, Inc., C.A. No. 97-12570-WGY (December 19, 2000) (awarding as an attorneys' fee one-third of a more than $5 million recovery); In re Peritus Software Services, Inc. Sec. Litig., C.A. No. 98-10578-WGY (February 28, 2000); In re Copley Pharmaceutical, Inc. Sec. Litig., C.A. No. 94-11897-WGY (D. Mass. Feb. 8, 1996) (awarding one-third of a $6.3 million settlement fund); Morton v. Kurzweil Applied Intelligence, Inc., C.A. No. 10829-REK (D. Mass. Feb. 4, 1998); In re Gillette Securities Litigation, C. A. No. 88-1858-REK (D. Mass. Mar. 30, 1994); Wilensky v. Digital Equipment Corporation, C.A. No. 94-10752-JLT (D. Mass. July 11, 2001); In re

Given this precedent approving one-third recovery for attorneys' fees in class action cases, the Court should recognize that a one-third recovery in this case is reasonable.

## VI.  **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that this Court grant final approval of the Settlement and the proposed Plan of Distribution as fair, reasonable, and adequate.  Specifically, Plaintiffs request that the Court issue a Final Approval Order in the form attached to this motion as Exhibit 4.

Respectfully submitted,

JENNA CRENSHAW, ANDREW BRICKLEY, CRISTIANO DUTRA, SHAUNTAY KING, KRYSTLE STRANGIS, KRISTIN MORENCY and all others similarly situated,

By their attorneys,

  /s/ Hillary Schwab
Shannon Liss-Riordan, BBO #640716
Hillary Schwab, BBO #666029
Sara Smolik, BBO #661341
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
(617) 994-5800
Email:  sliss@llrlaw.com,
hschwab@llrlaw.com,
ssmolik@llrlaw.com

Dated:        September 4, 2012

---

Picturetel Corporation Sec. Litig., C.A. No. 97-12135-DPW (D. Mass. Nov. 4, 1999) (approving award of one-third of a $12 million settlement fund); Zeid v. Open Environment Corp., C.A. No. 96-12466-EFH (D. Mass. June 24, 1999) (awarding a fee of one-third of a $6 million settlement).

## **CERTIFICATE OF SERVICE**

     I hereby certify that on September 4, 2012, a copy of this document was served by electronic filing on all counsel of record.

                                                 /s/ Hillary Schwab
                                                 Hillary Schwab, Esq.